■ In the Matter of JONATHAN LOVETT, Petitioner, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents. (And Another Related Proceeding.) — Proceedings pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Department of Environmental Conservation which granted an application by respondent Heritage Hills Water Works Corporation to remove additional water from a water supply. Late in 1972 the Town of Somers, located in northern Westchester County, approved a 3,100-unit residential condominium project known as Heritage Hills of Westchester (Heritage Hills) which was to be constructed on some 995 acres of land in the town over a period of 10 years. At the same time, since there was no public water supply in the town and it did not desire to operate a system for this development, the town established the Heritage Hills Water District. Pursuant to section 3 of the Transportation Corporations Law, the Heritage Hills Water Works Corporation (Corporation) was formed in 1973 for the purpose of supplying water to Heritage Hills and a water supply application was thereafter filed with the Department of Environmental Conservation (DEC). After a public hearing, by decision dated December 19, 1974, permission was given to construct a water supply system for 1,200 condominium units in accordance with the available volume of water. This "Phase I" stage of development ultimately produced a system consisting of two wells, chlorination equipment, storage and pumping facilities, and water mains. The proceedings now before us involve "Phase II" and result from an application by the Corporation to DEC in April of 1979 for permission to construct one or more wells for an increased supply of water so that additional units could be erected by Heritage Hills. Following a public hearing on this application during the summer of 1979, an Administrative Law Judge submitted a report which concluded that the aquifer upon which Heritage Hills is located could support an over-all total of 1,900 units and recommended that the application be granted subject to certain limiting conditions. His report was adopted as the decision of the commissioner and a permit was issued subject to such limiting conditions on January 28, 1980. Petitioners, residents of the area who oppose the determination of DEC, commenced these proceedings in February and March of 1980. Upon consolidation, both were transferred to this court for disposition. Numerous arguments are advanced by petitioners, but the main thrust of their challenge is an asserted lack of substantial evidence to support the decision of DEC. Their remaining contentions are plainly lacking in merit, and few of them require comment. The elements which must be satisfied to justify approval of a water supply permit are itemized in subdivision 2 of section 15-1503 of the Environmental Conservation Law, but not all of them are contested in these proceedings. Here, there was a clearly demonstrated public need for increasing the water supply to accommodate previously approved condominium units. Inasmuch as there was

no public supply available in the area,[*] expansion of existing facilities was the only realistic alternative. The adequacy of the supply was determined by the hearing officer and accepted by DEC to be a "maximum safe yield" of 450,000 gallons per day. This finding was based upon the account of an eminently qualified hydrogeologist testifying on behalf of the Corporation whose views and the underlying basis therefor were adopted by DEC. Although a hydrogeologist called by the town presented contrary opinions, his testimony was expressly rejected by the hearing officer. The choice of conflicting expert testimony in this area was properly within the discretion of the administrative agency (see *Matter of Rella v Berle,* 59 AD2d 56, 60, app dsmd 42 NY2d 1101, mot for lv to app den 43 NY2d 648). Moreover, expert testimony accepted by DEC also established that the proposed tapping of the aquifer would not affect other residents in the Phase II area, for their wells, which did not reach the aquifer, obtained water from other veins. Thus, there was substantial evidence to support a finding that a grant of the application would be just and equitable to all affected municipalities and their inhabitants, particularly with regard to their present and future water supply needs. Furthermore, the conditions attached to the authorization plainly manifest a recognition of future needs. We reject petitioner Lovett's contention that DEC's decision permits the Corporation to remove water from the New York City system. This argument is grounded on the theory that prolonged pumping from the aquifer might, under certain conditions, draw down the water table causing some water to temporarily flow back into the aquifer from the Croton River and Muscott Reservoir which are parts of the New York City system. In our view, petitioner Lovett lacks standing to assert what, essentially, would be a violation of a New York City ordinance (cf. *Matter of Dairylea Coop. v Walkley,* 38 NY2d 6, 10). If and when water is taken in such a manner, the City of New York can litigate the matter. Other issues of a technical nature do not warrant any relief. For example, it is contended that an error in the notice of hearing vitiates the entire application process. While there was an obviously inadvertent error in the notice, petitioners appeared and were fully heard on the merits. They are in no position to complain (cf. *Matter of Zartman v Reisem,* 59 AD2d 237, 242). Similarly, a later change of personnel in the office of the commissioner did not impair the prior designation or status of the hearing officer who thoroughly examined the evidence produced at these hearings. His detailed and comprehensive report, which contained findings, conclusions and conditions fully supported by the record, was thereafter adopted by DEC and the final decision should be confirmed. Determination confirmed, and petitions dismissed, without costs. Sweeney, J.P., Kane, Mikoll and Yesawich, Jr., JJ., concur.

---

[*] The Delaware Aqueduct of the New York City water supply system passes within 0.3 of a mile of the site, but this source is unavailable to private users (see *Incorporated Vil. of Cornwall v Environmental Protection Admin. of City of N.Y.,* 45 AD2d 297, 302-303).